HARVEY GROOT v. HAMPDEN L. STORY.

*Pleadings. Common Counts. Assignment. Waiver. Due-bill.*

A declaration in the common counts, or the money counts alone, is sufficient in an action to recover the price paid for a chattel returned by the purchaser to the vendor.

A due-bill as follows: "Due Mr. Harvey Groot, two hundred and ninety-five dollars in part payment for a piano forte, said piano to be selected by Mr. Groot," dated and signed, is assignable, and the assignee or his agent would have the same right to select a piano that the assignor had.

But the maker would be obliged to furnish only such a piano, upon demand, as was agreed upon when the due-bill was delivered, and if the attorney of the assignee had not authority to select such an one, and in fact selected and demanded such as the contract did not call for, a reply by the maker of the due-bill, that he could not have the one selected, or any other, and that he would not pay the due-bill, would not operate as a waiver by him of want of authority in the attorney to make a legal demand, or of the maker's right to claim that demand should be made before suit for such as the contract called for.

GENERAL ASSUMPSIT. Under a standing rule of court, and on motion of the defendant, made at a previous term, the plaintiff filed a specification of his claims, relied upon in this action, containing the following items only:

"1864. To cash, two hundred and ninety-five dollars...$295.00
May 28. To interest on same to April 10, 1866.........  40.41

$335.41"

Trial by jury, on the general issue, under that specification, at the September term, 1867, PIERPOINT, C. J., presiding.

The plaintiff introduced in evidence a written instrument, signed by the defendant, which was as follows:

" Due Mr. Harvey Groot, two hundred and ninety-five dollars, in part payment for a piano forte, said piano to be selected by Mr. Groot.

" Burlington, May 28, 1864.                    H. L. STORY."

And also introduced parol testimony tending to show that said instrument was executed in consideration of the return, by the plaintiff to the defendant, of a piano which the plaintiff had, a few months previously, purchased of the defendant for the sum of $295 in cash; that at the time of the return of said piano and the execution of said written instrument, it was orally agreed and

understood between the parties, that the plaintiff might select and purchase a more valuable piano of any dealer in the United States, and assign or transfer said written instrument in part payment therefor, to the amount expressed in said instrument; and that in case of such transfer the defendant would pay said amount in cash to the assignee of said written instrument; that the plaintiff in August, 1864, did, without the knowledge of the defendant, select and purchase of F. C. Lighte & Co., of New York, a piano of the price of $600, and pay and transfer to them the said written instrument in payment of $295, of the price of said piano, paying the remainder in cash; that immediately upon said transfer of said instrument to Lighte & Co., they notified said defendant by letter, that they held said written instrument, and requested payment thereof; that afterwards, the defendant called on Lighte & Co., in New York, and said instrument was then presented to him for payment, and that the defendant then refused to pay in money the amount specified in said instrument unless Lighte & Co. would discount to him 30 per cent. on the whole price of the piano sold by them to Groot ($600); this said company refused to do, but offered to discount $45, which was the per centage they were allowing to agents on sale of their pianos, which the defendant refused to do. The defendant did not then claim he was to pay in pianos, or offer so to pay, but claimed the discount as aforesaid. The plaintiff rested his case. Whereupon the defendant requested the court to direct a verdict for the defendant, but the court refused to so direct.

The testimony on the part of the defendant tended to show that said first named piano was received back by him in a greatly damaged condition, and said writing executed, upon the express understanding and agreement between him and the plaintiff, that the piano, in part payment of which the sum specified in said written instrument was to be applied, was to be of a price of $550 to $600, and not less; and if selected and purchased at any other place than at the defendant's music store in Burlington, was to be obtained through, or on account of, the defendant, as he, being a retail dealer in that kind of property, would thereby derive a profit from the sale. And that he had always been ready

and willing to perform the contract on his part, and previous to the commencement of this suit had, several times, at his music store, offered to the plaintiff's attorney to deliver to him such a piano as the defendant's testimony tended to show it was the duty of the plaintiff to select, and to apply the amount specified in said writing in part payment thereof. And that said attorney wholly refused to accept such offers, claiming the right to select and receive of the defendant, in said contract, a piano of the price of only $325.

The defendant's testimony also tended to show that when Lighte & Co. demanded of him payment in money of said $295, as aforesaid, he offered to pay to them, in money, the balance of said sum which should remain after deducting the per centage usually allowed to retail dealers on the sale of pianos of the price of the one sold by Lighte & Co. to Groot; which offer they refused to accept.

The plaintiff, in the close, introduced as a witness his attorney, L. L. Lawrence, who testified as follows:

"After I received authority from F. C. Lighte & Co., to select a piano in payment of the due-bill, I went to Story's store with the due-bill in hand and told him I had the due-bill which he gave to Groot; that F. C. Lighte & Co. had authorized me to select a piano in payment; that I had come to do so. Story thereupon replied that he had no due-bill to settle. He said he had taken counsel, and had been advised that he was not obliged to pay it, and further said that the only terms he would give them were to pay him fifty dollars damages. I then asked Story if he would pay anything on the due-bill. Story said he should pay them nothing on the due-bill, repeating that the terms were fifty dollars for damages, and these were the only terms on which he would settle. Story never stated to me any thing about the price of a piano Groot was to take. Just before I brought this suit, I called again upon Story, at his store, and told him I had the due-bill which he gave Groot, and had come to select a piano in payment for F. C. Lighte & Co. and all parties in interest. Story replied that he had no due-bill to pay. I then asked Story if he would allow me to price his pianos. I then asked the price of a piano which Story said was $350, and said to him I will take that piano, and took out my purse to pay the difference, $55. Story replied, you can't have that piano or

any other, and then said, I have given you my terms, pay me fifty dollars and I will settle it. Story made no inquiry as to my authority, and made no claim that the piano selected was not of sufficient price. He never at any time made any claim as to the terms of the contract different from this, that the piano was to be selected at his store by Groot. He never claimed to me that Groot was to select a high priced piano, but said he would pay the demand to Groot whenever he would select the piano. The second time I went to Story's, after I had authority to select a piano, I told him I came for F. C. Lighte & Co., and all parties in interest. I had no authority from Groot except the due-bill. I had no communication with Groot about it. My authority I derived from the due-bill and the letter from F. C. Lighte & Co. The due-bill was in my hands as attorney for F. C. Lighte & Co., for collection. He said the piano was to be selected at his store. He never stated to me that the piano was to be bought on his account, if bought elsewhere. Story told me, previous to my authority from F. C. Lighte & Co., to select a piano, that they could have a $525 piano by paying the difference, or a second-hand one worth $150, in discharge of the due bill, but no other. This offer was open, he said, till I could hear from Lighte & Co. I never offered to take a $525 piano, because after I had authority to select one he refused absolutely to let me have any piano. He never offered to pay in pianos after I had authority to select one, but always refused to pay in any way after he took counsel. Story informed me of the terms of the contract most every time I went there."

The plaintiff, in the close, also offered in evidence the letter from Lighte & Co. to Lawrence, referred to in Lawrence's testimony, only so much of which letter was received and read to the jury as reads as follows:

" We are willing to abide by your choice of a piano worth honestly as near $300 as possible. Say such an one as was originally sold to Mr. Groot for that sum."

No other testimony was introduced relative to Lawrence's authority to select or demand a piano on the contract aforesaid, or relative to what he did in respect to such selection or demand.

The defendant requested the court to instruct the jury as follows:

That upon the testimony in the case, the plaintiff is not entitled to recover. That no one but Groot himself had the right to select

a piano on the contract in question. This right could not be delegated by him to Lighte & Co. That even if Lighte & Co. were, by the transfer to them of the written instrument put in evidence by the plaintiff, invested with authority to demand a piano of the defendant, and to make the selection, they could not delegate the authority to Lawrence. That upon the testimony, Lawrence had no authority from Lighte & Co. to make a demand of *any* piano. That if Lawrence was authorized to demand any piano, he was not authorized to demand or receive such a piano as the contract, according to the defendant's showing, called for. That the pretended demand by Lawrence, unaccompanied by any designation of a proper piano, was insufficient, even if he had authority to make a demand.

But the court refused so to instruct the jury, and instructed them (among other things not excepted to,) as follows:

The contract between Groot and Story was assignable, as much so as a promissory note payable in specific articles: and the sale and transfer of the writing, by Groot to Lighte & Co., placed them in Groot's shoes, and gave them all the rights that he had under the contract, to be enforced by them in the name of Groot. If the contract was as the defendant's testimony tends to show it to have been, the plaintiff could not recover without proof of a demand according to the terms of the contract; but it was not necessary that the demand should have been made by Groot himself. This might be done by the agent or attorney of Lighte & Co., after the transfer to them.

The letter from Lighte & Co., to Lawrence, authorized him to make a legal demand, and any demand made by Lawrence within the limits of his authority, and according to the terms of the contract, would be sufficient.

The plaintiff's testimony tends to show that such a demand was made just before the suit was brought. That if they found the facts to be as testified to by Lawrence in respect to the demand by him, and the refusal of the defendant to let him have the $325 piano, or any other piano that he might select, that such demand and refusal were sufficient to entitle the plaintiff to recover, so far as a demand was concerned, and that thereafter Lawrence was under no obligation to make any other selection or demand.

To all which refusals of the court, and to the charge as above detailed, the defendant excepted. The charge was satisfactory in all other respects.

*Hard & Shaw*, for the defendant.

*L. L. Lawrence* and *R. H. Start*, for the plaintiff.

The opinion of the court was delivered by

WILSON, J. Upon the facts of this case, no well grounded objection can be made to the common counts, or to the money counts alone. The defendant, by taking back the piano, became indebted to the plaintiff for the $295; and the consideration of that indebtedness was for money, by the defendant had and received of the plaintiff, for which the defendant executed the due-bill in question. It is well settled law in this state, that even where there has been a special agreement, and the terms of which have been performed, so that nothing remains but the duty to pay money, the common counts will lie. *Way* v. *Wakefield*, 7 Vt., 223; *Mattocks* v. *Lyman et al.*, 16 Vt., 113; *Perry* v. *Smith*, 22 Vt., 301.

It is claimed by the defendant that the right to select a piano was conferred on Groot personally, and could not be exercised by another without the consent of the defendant. This position, we think, is not well taken. There is nothing in the evidence to except the claim from the general rule as to the assignability of choses in action. *Noyes* v. *Brown et al.*, 33 Vt., 431. The sale and transfer of the writing, by Groot to Lighte & Co., gave them all the rights that he had under the contract, to be enforced by them in the name of Groot. From this it follows that Lighte & Co., or any one duly authorized by them, could select such a piano as the defendant, by the terms of the agreement, was bound to deliver.

The main questions presented by the exceptions relate to the authority of Lawrence to select and demand such a piano as the contract called for, and to the selection and demand made by him. The due-bill upon its face shows that the parties contemplated that the plaintiff should select a piano worth more than $295. The defendant claimed, and his testimony tended to prove, that the plaintiff was to select a piano worth from $550 to $600, under the direction of the defendant. The requisite authority to make a legal demand was to be determined by the proof of the terms of the contract. Lawrence had possession of the due-bill, but his

authority to make a legal demand could not be determined by the mere fact that he was the attorney of the plaintiff, and as such had the claim in his hands for collection, for his authority was limited by the instructions of his principals, contained in their letter to him, under which he acted. He demanded a piano worth about $300, which demand would be sufficient if the jury found that the demand was for such a piano as the plaintiff, by the terms of the contract, had the right to select. But he had no authority to select or demand, and did not select or demand, or offer to select, such a piano as the contract, according to the defendant's testimony, called for. It is insisted by the plaintiff's counsel, that the statement of the defendant that he would not let Lawrence have " that piano, or any other," rendered any further demand unnecessary. But we think the declarations of the defendant, detailed in the bill of exceptions, as to what he would or would not do in regard to making payment, or delivering the piano demanded by Lawrence, they having been made to a person whose authority, according to the defendant's testimony, was not co-extensive with the terms of the contract, should not operate as a waiver by him of any want of authority in Lawrence to make a legal demand,. nor a waiver of the defendant's right to claim that a demand should be made, before suit, for such a piano as the plaintiff was required to select. We can not presume that Lawrence would have done, or offered to do, what he had no authority to do, if the defendant had not made those declarations. They were made in reply to what the defendant claimed, and what his testimony tends to show was a demand unauthorized by the terms of the contract; and they should be construed as a refusal merely to deliver what he claimed the plaintiff had no right to receive.

If Lawrence had no authority to select or demand, and did not select or offer to select, such a piano as the contract called for, the declarations of the defendant that he would not pay the due-bill or deliver the piano demanded, could not be treated as a refusal to perform the contract according to its terms as indicated by his testimony, and should have no more effect than if he had made those declarations to a stranger. The defendant's testimony tended to prove that he had always been ready to deliver such a

piano as his testimony tended to show the plaintiff was to select, or pay the money upon such selection, according to the terms of the contract. The court charged the jury (among other things) that " the letter from Lighte & Co. to Lawrence authorized him to make a legal demand, and any demand made by Lawrence within the limits of his authority, and according to the terms of the contract, would be sufficient." It is evident upon the view we have taken of the case, that the question whether the authority of Lawrence was sufficient to enable him to make, or to have made, a legal demand, depended upon the finding of the jury as to the terms of the contract. If the defendant was correct as to the terms of the contract, then Lawrence had no authority in the premises. The court further charged the jury " that if they found the facts to be as testified to by Lawrence in respect to the demand by him, and the refusal of the defendant to let him have the $325 piano, or any other piano he might select, that such demand and refusal were sufficient to entitle the plaintiff to recover so far as a demand was concerned, and that thereafter Lawrence was under no obligation to make any other selection or demand." We think that part of the charge last above quoted was erroneous. It allowed a recovery by the plaintiff on the ground that the defendant refused to deliver the piano demanded, or any other piano that Lawrence might demand, when he did not select or demand any other, notwithstanding the jury might have found that the defendant was correct as to the terms of the contract, and that Lawrence had no authority to select or demand, and did not select or demand, such a piano as the contract called for. The jury would understand from the charge that they were to treat the declarations of the defendant as to the piano demanded, and his general declaration as to " any other piano " Lawrence might have claimed to select, (but did not select, or offer to select, any other,) as a refusal to perform the contract at all. We think the court should have submitted the case upon the defendant's theory, as presented by his testimony, as well as upon the aspect of the case presented by the testimony of the plaintiff, and have told the jury that if they found the contract was as the defendant's testimony tended to

show it to have been, then Lawrence had no authority to make, and did not make, a legal demand, and that the plaintiff would not be entitled to recover. The result is that the judgment of the county court is reversed, and the cause is remanded.